# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

|  |  |
|---|---|
| MOV-ology LLC, | |
| Plaintiff, | Case No. 1:25-cv-246-ADA |
| v. | JURY TRIAL DEMANDED |
| ORACLE CORPORATION and ORACLE AMERICA, INC. | ████████████ |
| Defendants. | |

## DEFENDANTS' OPPOSED MOTION TO TRANSFER VENUE

## UNDER 28 U.S.C. § 1404(A)

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................1

II.     FACTUAL BACKGROUND ...............................................................................1

        A.      Plaintiff MOV-ology LLC ................................................................1

                1.      Plaintiff Has No Ties To WDTX .............................................1

        B.      Defendants Oracle Corporation and Oracle America, Inc. .....................1

                1.      Oracle CX Marketing Accused Features ....................................2

III.    LEGAL STANDARD...........................................................................................4

IV.     THIS CASE SHOULD BE TRANSFERRED TO NDCA ...................................5

        A.      This Action Could Have Been Brought in NDCA..................................5

        B.      NDCA Is Clearly The More Convenient Forum....................................5

                1.      The Willing Witnesses Factor Strongly Favors Transfer to NDCA ...........5
                2.      Relative Ease of Access to Sources of Proof Favors Transfer...................11
                3.      The Compulsory Process Factor Favors Transfer to NDCA ...................12
                4.      Judicial Economy Factor Is Neutral.........................................................13
                5.      The Court Congestion Factor Is Neutral...................................................14
                6.      The Local Interest Factor Favors Transfer To NDCA..............................15
                7.      The Remaining Public Interest Factors Are Neutral................................15

V.      CONCLUSION....................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*AlmondNet, Inc. v. Meta Platforms, Inc.*,
  W-21-CV-00896, 2022 WL 22881848 (W.D. Tex. Nov. 29, 2022)............................8, 12, 15

*AlmondNet, Inc. v. Samsung Elecs., Co.*,
  6:21-cv-00891, 2022 WL 17574082 (W.D. Tex. Nov. 28, 2022) .........................................8, 9

*Def. Distributed v. Bruck*,
  30 F.4th 414 (5th Cir. 2022) .................................................................................................12

*DoDots Licensing Sols. LLC v. Apple Inc.*,
  No. 22-cv-00533-ADA, 2023 WL 4980561 (W.D. Tex. Aug. 3, 2023).....................10, 11, 15

*Gentex Corp. v. Meta Platforms, Inc.*,
  No. 21-CV-00755-ADA, 2022 WL 2654986 (W.D. Tex. July 8, 2022) .................................8

*In re Apple Inc.*,
  No. 2022-128, 2022 WL 1196768 (Fed. Cir. Apr. 22, 2022) .....................................10, 12, 15

*In re Apple*,
  581 F. App'x 886 (Fed. Cir. 2014) ........................................................................................12

*In re Apple*,
  979 F.3d 1332 (Fed. Cir. 2020)...............................................................................................6

*In re Clarke*,
  94 F.4th 502 (5th Cir. 2024) ..............................................................................................5, 14

*In re Cray Inc.*,
  871 F.3d 1355 (Fed. Cir. 2017)...............................................................................................5

*In re DoDots Licensing Sols. LLC*,
  No. 2024-100, 2023 WL 8642716 (Fed. Cir. Dec. 14, 2023)................................................11

*In re Genentech, Inc.*,
  566 F.3d 1338 (Fed. Cir. 2009)....................................................................................5, 11, 14

*In re Google LLC*,
  58 F.4th 1379 (Fed. Cir. 2023) ..............................................................................................14

*In re Honeywell Int'l Inc.*,
  No. 2023-152, 2024 WL 302397 (Fed. Cir. Jan. 26, 2024)...................................................10

*In re Hulu, LLC*,
   No. 2021-142, 2021 WL 3278194 (Fed. Cir. Aug. 2, 2021) ................................................12

*In re Morgan Stanley*,
   417 F. App'x 947 (Fed. Cir. 2011) .........................................................................................14

*In re Nintendo Co.*,
   589 F.3d 1194 (Fed. Cir. 2009)................................................................................................6

*In re Samsung Elecs. Co.*,
   2 F.4th 1371 (Fed. Cir. 2021) ................................................................................................15

*In re SAP Am., Inc.*,
   133 F.4th 1370 (Fed. Cir. 2025) ............................................................................................13

*In re TikTok, Inc.*,
   85 F.4th 352 (5th Cir. 2023) ................................................................................6, 9, 10, 11

*In re Verizon Bus. Networks Srvcs. Inc.*,
   635 F.3d 559 (Fed. Cir. 2011).................................................................................................14

*In re Vistaprint*,
   628 F.3d 1342 (Fed. Cir. 2010)...............................................................................................14

*In re Volkswagen of Am., Inc.*,
   545 F.3d 304 (5th Cir. 2008) (en banc) ................................................................4, 5, 6, 15

*Monterey Rsch., LLC v. Broadcom Corp.*,
   No. W-21-CV-00542, 2022 WL 526242 (W.D. Tex. Feb. 21, 2022).......................................9

*MOV-ology LLC v. BigCommerce Holdings, Inc., et al*,
   No. 6-22-cv-00084, Dkt. 96 (W.D. Tex. May 25, 2023) .......................................................13

*MOV-ology LLC v. Temenos AG*,
   No. 6-23-cv-00391, Dkt. 57 (W.D. Tex. Aug. 08, 2024) .......................................................13

*R2 Sols. LLC v. Databricks Inc.*,
   No. 4:23-cv-1147, 2024 WL 4932719 (E.D. Tex. Dec. 2, 2024) ...........................................13

*S.M.R. Innovations Ltd. v. Apple Inc.*,
   756 F. Supp. 3d 453 (W.D. Tex. 2024)....................................................................................14

*Safecast Ltd. v. Google LLC*,
   No. W-22-CV-00678-ADA, 2023 WL 4277349 (W.D. Tex. June 28, 2023) ........................11

*Scramoge Tech. Ltd. v. Apple Inc.*,
   No. 6-21-CV-01071-ADA, 2023 U.S. Dist. LEXIS 206848 (W.D. Tex. June
   22, 2023) ..........................................................................................................................7, 11

*Speir Techs. Ltd. v. Apple Inc.*,
    No. 6:22-CV-00077, 2022 WL 17945398 (W.D. Tex. Dec. 15, 2022) ..................................12

## STATUTES

28 U.S.C. § 1404(a) ..........................................................................................................4, 5, 14

## I.     INTRODUCTION

This case belongs in the Northern District of California ("NDCA").  NDCA has long been the locus of technical direction for the Responsys product and is far more convenient for numerous witnesses with knowledge about the Responsys, Eloqua, and Infinity products that Plaintiff accuses of infringement.  And as a longtime technical hub, NDCA has subpoena power over prior artists important to invalidity issues.  By contrast, the Western District of Texas ("WDTX")'s connections to this case are tenuous at best.  Plaintiff has no apparent connection to WDTX—in fact, Plaintiff, along with its inventors, are in California.  Oracle has limited relevant witnesses and evidence available in WDTX.  WDTX is not a convenient forum for this case.  Oracle's evidence supporting this Motion establishes good cause for transfer under the private and public interest factors and that NDCA is clearly the more convenient forum for this action.  The Court should grant Oracle's motion for transfer.

## II.     FACTUAL BACKGROUND

### A.     Plaintiff MOV-ology LLC

#### 1.     Plaintiff Has No Ties To WDTX

Plaintiff MOV-ology LLC asserts four patents: U.S. Patent Nos. 9,280,531 (the "'531 patent"), 9,286,282 (the "'282 patent"), 9,589,281 (the "'281 patent"), and 10,769,358 (the "'358 patent"), collectively, "Asserted Patents."  The inventors listed on the Asserted Patents are Thomas Chow Ling, III and Peter Iveson Norton—both of Yorba Linda in Southern California.  Dkt. 1-2, 1-3, 1-4, 1-5; Exs. 1-2.  MOV Digital Media, Inc. in Anaheim, California is the original assignee of the Asserted Patents.  Dkts. 1-2, 1-3, 1-4, 1-5.  Plaintiff's corporate headquarters is also in Anaheim, California.  Dkt. 1, ¶ 7; Ex. 3.  Plaintiff has no connection to this District or to Texas.

### B.     Defendants Oracle Corporation and Oracle America, Inc.

Plaintiff accuses several of Oracle's CX Marketing products and features—Responsys,

Eloqua, and Infinity, collectively "Accused Features"—of infringing the Asserted Patents.[1]  Oracle Corporation and its wholly owned subsidiary Oracle America, Inc. (collectively, "Oracle") maintain offices and employ personnel across the U.S., with a significant presence in NDCA— including Oracle America Inc.'s principal place of business at its campus in Redwood Shores, California—related to the Accused Features.  *See* █████ Decl., ¶¶ 6-8.  The patent licensing lead, █████████ along with much of █ team, is also there.  █████████ Decl., ¶ 30.  By contrast, although Oracle has an Austin campus, its connection to this case is limited at best.

## 1.    Oracle CX Marketing Accused Features

Although insufficiently pled, *see* Dkt. 13, MOV-ology's Complaint and infringement contentions appear to accuse Oracle's Responsys, Eloqua, and Infinity software products of infringement, and cite links to forms, form creation, data collection, performance tracking functionalities, integration, personalization and retargeting.[2]  *See, e.g.*, Dkt. 1 at ¶¶ 34, 45; Exs. 4-8.  Plaintiff's contentions are unclear as to whether each product is accused individually or only as used together because each patent's chart cites documentation from all three products without further explanation.  All three accused products—Responsys, Eloqua, and Infinity—fall under the Oracle CX Marketing umbrella.  █████ Decl., ¶ 4; █████ Decl., ¶ 5; █████ Decl., ¶ 4.

Key employees responsible for the vision, strategy, and development of Oracle CX Marketing are concentrated in NDCA and the West Coast.  On the engineering side, Oracle CX Marketing ultimately rolls up to █████, in the San Francisco Bay Area, and █████,

---

[1] Oracle CX Marketing was formerly branded "Oracle Marketing Cloud."  *See, e.g.*, █████ Decl., ¶ 2.

[2] Forms: *see, e.g.*, Ex. 5 at 3-4, 9-10, 12-18; Ex. 6 at 3, 9-10, 12-18; Ex. 7 at 4-6, 12, 17-21, 23, 37-40; Ex. 8 at 3, 6-9, 11-14; 47-54.  Data Collection and Tracking: *see, e.g.*, Ex. 6 at 4-6, 12, 17-21; Ex. 7 at 4-6, 12, 17-21, 23-27, 30, 34; Ex. 8 at 4-5, 10, 15-20, 22-27, 31, 36; Integration and Retargeting: *see, e.g.*, Ex. 5 at 37-40, 47-50; Ex. 7 at 24-27, 40-42; Ex. 8 at 1-4, 22-27.

███████████████████████████, who is in India. ████████ Decl., ¶¶ 10-11; ████████ Decl.,
¶¶ 12-13; ████████ Decl., ¶ 7. Responsys, Eloqua, and Infinity have product leaders in and near
NDCA and on the West Coast, as well as strong ties to these locations.

**Responsys.** Generally, Responsys is used to build digital marketing campaigns and to send
relevant, targeted messages to customers and prospects. ████████ Decl., ¶ 5. Responsys was a
Bay Area-based company prior to Oracle's acquisition in 2013 and still has a large Bay Area
presence. *Id.*, ¶¶ 5, 14-16. ███████████████████ in Redwood Shores is ███████████
███████ responsible for product development in Oracle's CX Marketing organization, in
particular for Responsys, who reports directly to ████████. *Id.*, ¶¶ 2, 11, 13. ████████ has
worked with the Responsys product ███████ and has held leadership roles in the development
of its product and features, including those referenced in Plaintiff's infringement contentions. *Id.*,
¶¶ 2, 5; *see, e.g.*, Ex. 5 at 47-55; Ex. 7 at 23-27; Ex. 8 at 22-28, 46. In addition to ███████████,
key individuals for the Responsys product—and its Accused Features—are in the San Francisco
Bay Area and on the West Coast, including senior product managers, such as ███████████
███████████ and ████████ ███████████, and senior architects, such as ████████
████████████ and ████████ ███████████. ████████ Decl., ¶¶ 16-19, 22.

**Infinity.** Oracle's Infinity product line, which is sometimes referred to as "Behavioral
Intelligence," broadly relates to transforming data into actionable insights and real-time marketing
responses. ████████ Decl., ¶ 9. It includes features such as real-time activation and data collection,
is designed to listen for behavioral signals and subsequently trigger metadata related to these
behaviors to other marketing automation platforms such as Responsys and Eloqua. *See id.*, ¶ 8.
For Infinity, ███████████ ████████████ leads engineering under ████████. *Id.*, ¶ 13.
███████████ manages ████████████ ███████████, who is a director of development for the

Infinity product whose work includes supervising a ███████████ team related to Infinity data collection processing and analysis led by ██████████ ████████████. *Id.*, ¶¶ 16-18. Also reporting to █████████████ █████████████, whose senior product managers—███ ██████ █████████ and ██████ ████████████—have shaped the product direction of Infinity. *Id.*, ¶¶ 12, 14, 25. ████████████████████████████████████████████████████████, ████████████████████████████████████████████████. *See id.*, ¶¶ 23-24.

**Eloqua.** Eloqua provides marketing automation of cross-channel campaigns, and includes integration, usage tracking, and campaign features. *See, e.g.,* ██████ Decl., ¶¶ 2, 13. In addition to Oracle CX leadership in the Bay Area, Eloqua has a number of engineers, product managers, and an architect on the West Coast—each with at least ten years of experience working on Eloqua, reporting up to ███████████████ (██████████████, ████████████████████████████ *Id.*, ¶¶ 10-11, 13, 15. ███████████████████████████████████████████████ ████████████████████████████████████████████████████████. *Id.*, ¶ 16. ███████████████████████████████████ ████████████ ████████████████

as well as several of ███ team members are also in or near NDCA. ████████████ Decl., ¶¶ 24-27. Some of ████████ broader sales team is in Texas, however, those with more familiarity with the Accused Features are in or near NDCA. *Id.*

## III.   LEGAL STANDARD

"For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer" any civil action to any district "where it might have been brought." 28 U.S.C. § 1404(a). "The preliminary question under § 1404(a) is whether a civil action 'might have been brought' in the destination venue." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) (en banc). If a case might have been brought in the proposed forum, the Fifth Circuit then considers "private" and "public" interest factors to determine whether transfer is warranted. *Id.* at

315.  The private interest factors are "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.  *Id.*  The public interest factors are "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law."  *Id.*

## IV.    THIS CASE SHOULD BE TRANSFERRED TO NDCA

### A.    This Action Could Have Been Brought in NDCA

This case satisfies the threshold requirement for transfer under § 1404(a).  Oracle has regular and established places of business in NDCA and acts of alleged infringement occurred there.  *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017); *see generally* ▮▮▮▮▮ Decl.

### B.    NDCA Is Clearly The More Convenient Forum

There is good cause for transfer because the convenience of potential witnesses, ease of access to evidence, availability of compulsory process, and local interest factors favor or strongly favor transfer to NDCA.  The evidence establishes that the gain in convenience will materialize and will be significant.  *See In re Clarke*, 94 F.4th 502, 508 (5th Cir. 2024).

#### 1.    The Willing Witnesses Factor Strongly Favors Transfer to NDCA

The most significant factor in the transfer analysis is the convenience of the witnesses, which strongly favors transfer here.  *In re Genentech, Inc.*, 566 F.3d 1338, 1342 (Fed. Cir. 2009). The Fifth Circuit applies a "100-mile rule": "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled."  *Volkswagen*, 545 F.3d at 317.  Underlying this rule is that "[a]dditional distance means

5

additional travel time" and greater expenses. *Id.* The Federal Circuit, applying Fifth Circuit law, has explained that "the '100-mile' rule should not be rigidly applied" where "witnesses . . . will be required to travel a significant distance no matter where they testify." *In re Apple*, 979 F.3d 1332, 1341-42 (Fed. Cir. 2020). The Fifth Circuit panel decision in *In re TikTok, Inc.*, 85 F.4th 352 (5th Cir. 2023), adhered to the en banc *Volkswagen* court's rationale for the 100-mile rule. The *TikTok* decision emphasized that increased distance results in additional travel time and expenses, citing *In re Nintendo Co.*, 589 F.3d 1194, 1199 (Fed. Cir. 2009). *TikTok*, 85 F.4th at 361-62 & n.8.

Relative to WDTX, NDCA is clearly more convenient for potential willing witnesses relevant to and knowledgeable about the Accused Features, and most likely to testify at any trial. Plaintiff's infringement contentions cite webpages about Responsys, Eloqua, and Infinity products, and particularly functionality related to forms, integrations, data collection, performance tracking, and retargeting. *See* Exs. 5-8. The witnesses most relevant to the identified features would find NDCA far more convenient.

**NDCA.** Technical direction and strategy for Oracle CX Marketing is in NDCA. ███ ████, ██████████████████████████████████████████████████████ ('CX') is in the San Francisco Bay Area and leads the CX organization. ████████ Decl., ¶ 10; ██████ Decl., ¶ 12. ████████████ ████████████████████, is responsible for product development of Infinity, including tag management and data management, and lives and works in the Bay Area. ██████ Decl., ¶13. ██████████████████ is a ████████████████ focusing on Oracle CX Marketing products—including Responsys. ██████ Decl., ¶ 2. Lead architects, senior product managers, and senior engineers in the Responsys product, its Infinity integration, personalization, and retargeting are also located in the Bay Area. *Id.*, ¶¶ 13-15. This includes ████████████████████████████████████████████████████████████████████████████

███ — ███████████████████████████. *Id.*, ¶¶ 17, 19-23.  For nearly

two decades, ██████ has contributed to enhancing the core features of the product.  *Id.*, ¶ 17.

██████ has been instrumental in developing forms and Infinity integration features for Responsys.

*Id.*, ¶ 19.  ████████ manages a large team with a Bay Area presence and oversees quality

assurance and release management for Responsys.  *Id.*, ¶ 20.  ██████ likewise manages a

Bay Area Responsys team and has been a part of driving product development, especially in

personalization.  *Id.*, ¶ 21.  Additionally, ██████, a lead architect, has played a leading role in

architectural strategies and feature and infrastructure implementation for Responsys.  *Id.* ¶ 22.

Oracle's sales for these products is also run from NDCA.  ████████████

██████ leads sales for CX Marketing.  *Id.*, ¶ 24.  ██████ ███████████ oversees a ████

██████████ responsible for sales of the Responsys and Eloqua CX Marketing products.

*Id.*, ¶ 25.  ██████████████████████████ *Id.*, ¶ 25.  Oracle

witnesses relevant to damages issues are also in NDCA.  ██████ Decl., ¶ 30.

**California.**  NDCA also is more convenient for California-based witnesses outside of

NDCA, and would minimize their time spent away from home, work, and family.  *See, e.g.*,

*Scramoge Tech. Ltd. v. Apple Inc.*, No. 6-21-CV-01071-ADA, 2023 U.S. Dist. LEXIS 206848, at

*21-23 (W.D. Tex. June 22, 2023) (finding witness in San Diego among those "who will find it

more convenient to travel to the NDCA for trial").  Potential witness █████████ ██████

██████████████ who leads the development teams for Infinity within Oracle CX

Marketing, lives in ██████ ██████████████████. ██ Decl.,

¶¶ 16-17; Exs. 9-10.  ██████ reports directly to ██████ █████████ and leads

a team ██████—including engineers with experience in developing Infinity features such as

data collection, the Infinity tag, tracking through forms, creation of events and behaviors, and

integration with Responsys. ███ Decl., ¶¶ 16-17.  On the sales side, members of ███

████████████████████████████████████████████████████████████████

███████ ████████ ██████████████████████████████ would find travel to NDCA

more convenient as well. ████████ Decl., ¶ 25; Exs. 18-21.

**Northwest.**  As this Court has recognized, NDCA is also more convenient for witnesses in

Washington and Oregon because of the short travel time to and from NDCA.  *See, e.g.*, *Gentex*

*Corp. v. Meta Platforms, Inc.*, No. 21-CV-00755-ADA, 2022 WL 2654986, at *7 (W.D. Tex. July

8, 2022) (finding witnesses in Washington "can drive or take a short flight to . . . NDCA, testify

for several hours, and return home within the same day"); *AlmondNet, Inc. v. Meta Platforms, Inc.*,

W-21-CV-00896, 2022 WL 22881848, at *7 (W.D. Tex. Nov. 29, 2022) (finding NDCA more

convenient for witnesses in Washington); *AlmondNet, Inc. v. Samsung Elecs., Co.*, 6:21-cv-00891,

2022 WL 17574082, at *5 (W.D. Tex. Nov. 28, 2022) (similar for Oregon).

A number of individuals knowledgeable about the Accused Features are in the Northwest

of the United States and would similarly find NDCA far more convenient.  This includes Oregon

potential witnesses such as ██████ █████████, █████████ █████████, ███

████ ████████, ████████████ █████████, ████████ ████████

███, ████████ █████████, and █████████ ████████████. Exs. 11-17.

For Responsys, initial engineering leader and chief architect, ████████████████████

████████████, including code for forms. ████████ Decl., ¶ 18.  For Infinity, █████████

is ████████████████████████ with more than two decades of experience with the

Infinity product—including overseeing the analytics application, facilitating data exploration

through various channels like the CX tag and data collection API, and designing and implementing

Infinity's real-time activation feature. ██████ Decl., ¶¶ 3, 5, 8-9. █████████ is █████████

reporting to ████████ and the ████████ of a team working on the Infinity collection server that processes data from the tag into the pipeline for analysis. *Id.*, ¶ 18. ████████████████ ████████████████████ serves as a key U.S. contact, collaborates with that team, and is knowledgeable about their work. *Id.* ████████████, ████████████, works on the Infinity collection pipeline and connector mechanisms and integrations, including with Responsys and Eloqua. *Id.*, ¶ 20. ████████ is ████████████████████ and plays a key role in assessing and maintaining the security integrity of Infinity, as well as Responsys and Eloqua. *Id.*, ¶ 26. For Eloqua, ████████ is ████████████████████ with expertise in the product and its integrations, including with Infinity, and user interaction tracking. ████ Decl., ¶¶ 2, 10. ████████ is currently responsible for Eloqua's APIs and campaign and program canvases. *Id.*, ¶13.

**Utah, India, and Canada.** There are pockets of potentially relevant witnesses in these locations as well. *See* ████████ Decl., ¶ 8; ████ Decl., ¶¶ 19, 22; ████████ Decl., ¶¶ 12, 14-15, 17. However, ████████ ████████, ████████████ ████████████, ████, ████ ████████, and ████████ ████████████ are all knowledgeable about the development work related to the Accused Features performed by their reports in India and Canada, potentially alleviating the need for their reports to travel to the United States to testify. *See* ████████ Decl., ¶ 8; ████ Decl., ¶¶ 15, 17; ████████ Decl., ¶ 12. Moreover, courts have found, when considering absolute distance and travel time, that witnesses in these and locations of a similar distance would generally either slightly favor transfer or are neutral. *See, e.g., Samsung Elecs.*, 2022 WL 17574082, at *4; *TikTok*, 85 F.4th at 361-62 & n.8 (finding NDCA "clearly more convenient" for witnesses in China); *Monterey Rsch., LLC v. Broadcom Corp.*, No. W-21-CV-00542, 2022 WL 526242, at *7-8, *11-12 (W.D. Tex. Feb. 21, 2022) (finding witnesses located in

India, Colorado, and Israel neutral); *DoDots Licensing Sols. LLC v. Apple Inc.*, No. 22-cv-00533-ADA, 2023 WL 4980561, at *5-6 (W.D. Tex. Aug. 3, 2023) (finding witnesses in Colorado not "in favor or against transfer"), *aff'd sub nom. In re DoDots Licensing Sols. LLC*, No. 2024-100, 2023 WL 8642716 (Fed. Cir. Dec. 14, 2023).

   **Texas.** Only a small handful of Oracle CX Marketing individuals in ████████ organization are in Texas. Of the ███ CX Marketing employees reporting up to ████████, none is in Texas. ████████ Decl. ¶ 9. For Eloqua, which has a geographically diverse team, with the pockets of employees on the West Coast, Canada, and India, ████████████████ ██████████████████████████. ████████ Decl., ¶ 16. For Infinity, ██████████████████████████ ██████████████████████████. ████ Decl., ¶¶ 21-22. ██████████████████████ ██████████████████████████████ ██████████████████████████. ████████ Decl., ¶¶ 24-26.

   Oracle's limited presence in Texas with respect to the Accused Features does not change that NDCA "would be more convenient for the witnesses overall" given the large concentration of witnesses with a depth of knowledge of the Accused Features in and nearer to NDCA. *In re Apple Inc.*, No. 2022-128, 2022 WL 1196768, at *2 (Fed. Cir. Apr. 22, 2022); *accord TikTok*, 85 F.4th at 361-62; *In re Honeywell Int'l Inc.*, No. 2023-152, 2024 WL 302397, at *3 (Fed. Cir. Jan. 26, 2024) (holding that despite a handful of potential witnesses living in the state of Texas, "[w]ith . . . no willing witnesses identified in the Western District of Texas, it cannot fairly be said that the willing witness factor supports keeping this case in [WDTX]."). MOV-ology has no WDTX presence—it is in Southern California. Thus, its witnesses would also find NDCA more

convenient.  *See, e.g.*, *Scramoge*, 2023 U.S. Dist. LEXIS 206848, at *21-23 (finding witness in San Diego among those "who will find it more convenient to travel to the NDCA for trial").

### 2.    Relative Ease of Access to Sources of Proof Favors Transfer

This factor favors transfer because the relevant documentation and source code is access-controlled and there are more custodians in or near NDCA than WDTX.  *See DoDots*, 2023 WL 4980561, at *7-8 (noting location of electronic document custodians and access controls); *Safecast Ltd. v. Google LLC*, No. W-22-CV-00678-ADA, 2023 WL 4277349, at *3 (W.D. Tex. June 28, 2023) (finding factor favored transfer where custodians were in NDCA).  In patent cases, "the bulk of the relevant evidence usually comes from the accused infringer."  *Genentech*, 566 F.3d at 1345.

As discussed, (*supra* IV.B.1), a number of Oracle CX Marketing custodians are in and near NDCA.



. *See* ████ Decl., ¶ 17; ████████ Decl., ¶ 28; ████ Decl., ¶ 27.  These documents are access-controlled and restricted to the employees responsible for those products. ████ Decl., ¶ 17; ████████ Decl., ¶ 28; ████ Decl., ¶¶ 27-28. ████████████████ ████ Decl., ¶ 28; ████ Decl., ¶ 29.

Transfer is favored when custodians of source code and other important documentation are located in the transferee district.  *TikTok*, 85 F.4th at 359 (finding factor favored transfer where "source code is the most important evidence in this case" and "only certain of petitioners' employees can access the source code because petitioners have placed it behind a security clearance"); *In re DoDots Licensing Sols. LLC,*, No. 2024-100, 2023 WL 8642716, at *2 (Fed. Cir. Dec. 14, 2023) (district court "correctly found [factor] to favor transfer" where "only Apple employees in NDCA are credentialed to access that information").

████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████████████  *See, e.g.*, *Apple*, 2022 WL

1196768, at *4; *Speir Techs. Ltd. v. Apple Inc.*, No. 6:22-CV-00077, 2022 WL 17945398, at *6-7

(W.D. Tex. Dec. 15, 2022) (finding factor favored transfer when "electronic documents are more

conveniently accessed in the NDCA" despite relevant Austin custodians).

Third-party evidence is also likely in NDCA.  As explained in the next section (*infra*

IV.B.3), companies and individuals located in NDCA likely have evidence about prior art systems.

For its part, MOV-ology has no ties to, or evidence in, this District.  This factor favors transfer.

### 3.    The Compulsory Process Factor Favors Transfer to NDCA

As is the case here, this factor "weigh[s] heavily in favor of transfer when more third-party

witnesses reside within the transferee venue than reside in the transferor venue."  *In re Apple*, 581

F. App'x 886, 889 (Fed. Cir. 2014); *see also Def. Distributed v. Bruck*, 30 F.4th 414, 434 (5th Cir.

2022) ("Access to compulsory process for non-party witnesses is the gravamen of the [compulsory

process] private interest factor.").  There are likely to be many important prior art witnesses subject

to compulsory process in NDCA.  *See, e.g.*, *In re Hulu, LLC*, No. 2021-142, 2021 WL 3278194,

at *4 (Fed. Cir. Aug. 2, 2021) ("[W]here . . . the movant has identified multiple third-party

witnesses and shown that they are overwhelmingly located within the subpoena power of only the

transferee venue, this factor favors transfer even without a showing of unwillingness for each

witness.").  This Court has acknowledged the relevance of prior artist locations, even if not all are

likely to testify at trial.  *See, e.g.*, *Meta*, 2022 WL 22881848, at *10 ("[T]he prior art witnesses

have relevant knowledge . . . that [accused infringer] may rely on in its invalidity defense.").

California is home to a number of prior art inventors of art that Oracle will rely on in its

invalidity contentions.[3]    Moreover, individuals with expertise and knowledge about prior art systems as well as companies housing relevant documents are in California too, ██████████

███████████████████████████████████████████████████████████████

████.   *See* Exs. 58-59, 62-64.   Likewise, employees who have worked on these prior art systems are in the subpoena power of NDCA.   *See, e.g.*, Exs. 60-63, 65-66.   Because subpoena power of NDCA is needed to compel trial testimony from such third-party witnesses, this factor supports transfer.

### 4.    Judicial Economy Factor Is Neutral

A transferor court's prior experience with the asserted patents "is a permissible consideration in ruling on a motion to transfer venue, but it does not carry much weight."   *R2 Sols. LLC v. Databricks Inc.*, No. 4:23-cv-1147, 2024 WL 4932719, at *5 (E.D. Tex. Dec. 2, 2024) (internal quotes omitted); *see also In re SAP Am., Inc.*, 133 F.4th 1370, 1374-75 (Fed. Cir. 2025) (addressing previous litigation in the transferor court involving one of the same patents: "here, the [previous] litigation was dismissed for unrelated reasons, and once dismissed, its earlier pendency was irrelevant and could not be relied on to deny transfer").   All of the previous cases that Plaintiff has filed with this Court have been dismissed.   Two of these cases were dismissed before the defendant even filed an answer.   Nos. 7-24-cv-00236 and 6-24-cv-00250 (*see* Ex. 24-25).   While two others reached claim construction briefing, the Court only ruled in one—and that was over two years ago and did not cover all patents asserted here.   *MOV-ology LLC v. BigCommerce Holdings, Inc., et al*, No. 6-22-cv-00084, Dkt. 65 (W.D. Tex. Sept. 30, 2023) (Exs. 26-27) ; *MOV-ology LLC v. Temenos AG*, No. 6-23-cv-00391 (Ex. 28).   Even if this Court considers its past

---

[3] *See, e.g.*, Exs. 27-57: Bierner, Handel, Nazer, Ammatanda, Balasubramanian, Kotecha, Boyd, Bryan, Stover, Jensen, Wang, Moon, Mui, Tulsi, Muret, Nandy, Gorman, Rikhtyerchik, Faradjev, Kruegel, Vigna.

experience, "judicial economy considerations could not undermine the clear case for transfer in light of the imbalance on the other factors." *In re Google LLC*, 58 F.4th 1379, 1383 (Fed. Cir. 2023). Indeed, it is proper to "transfer to the far more convenient venue even when the trial court has some familiarity with a matter from prior litigation." *In re Morgan Stanley*, 417 F. App'x 947, 949 (Fed. Cir. 2011); *see also In re Verizon Bus. Networks Srvcs. Inc.*, 635 F.3d 559, 562 (Fed. Cir. 2011) ("To interpret § 1404(a) to hold that any prior suit involving the patent can override a compelling showing of transfer would be inconsistent with the policies underlying § 1404(a)."); *In re Vistaprint*, 628 F.3d 1342, 1347 n.3 (Fed. Cir. 2010) (noting it "does not mean that, once a patent is litigated in a particular venue the patent owner will necessarily have a free pass to maintain all future litigation involving that patent in that venue"). Here, four other factors support transfer, and none weigh against it. Thus, the judicial economy factor is neutral.

### 5. The Court Congestion Factor Is Neutral

This is "a 'speculative' factor." *Clarke*, 94 F.4th at 515. Further, there is no appreciable difference in time to trial between NDCA and WDTX. *See* Exs. 67-69. Even a slightly faster median time to trial does not weigh against transfer, because MOV-ology does not allege competition with Oracle and is thus "not threatened in the market in a way that, in other patent cases, might add urgency to case resolution." *Google*, 58 F.4th at 1383. "Court congestion will be awarded no weight when there is a non-competing plaintiff in a patent case. Therefore, [the court congestion] factor is neutral." *S.M.R. Innovations Ltd. v. Apple Inc.*, 756 F. Supp. 3d 453, 466 (W.D. Tex. 2024). And if "relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all those other factors." *Genentech*, 566 F.3d at 1347. Accordingly, this factor is neutral, and it does not weigh against transfer.

**6.     The Local Interest Factor Favors Transfer To NDCA**

This factor favors transfer because a significant factual connection exists between NDCA and the events leading to this suit. *See DoDots*, 2023 WL 4980561, at *11 ("To determine which district has the stronger local interest, the Court looks to where the events forming the basis of infringement occurred."). Technical direction and product development of the Accused Features have strong ties to NDCA—giving it a local interest in this suit.

Prior to its acquisition by Oracle in 2017, Responsys was a start-up in the San Francisco Bay Area, and much of the development team is still based there. ███████ Decl., ¶¶ 5, 14. Coupled with the design and development work, these are "significant factors that give [NDCA] a legitimate interest" in the case. *In re Samsung Elecs. Co.*, 2 F.4th 1371, 1380 (Fed. Cir. 2021); *see also Meta*, 2022 WL 22881848, at *12.

By contrast, WDTX has no local interest in this case. Each accused product came to Oracle through an acquisition and has no unique ties to Texas. *See* ███████ Decl., ¶¶ 1, 5-6; ███████ Decl., ¶¶ 1, 5; ███████ Decl., ¶ 6. Oracle's general presence in the district "does not alone give [this] district a special interest in the case." *Apple*, 2022 WL 1196768, at *3.

**7.     The Remaining Public Interest Factors Are Neutral**

The remaining public interest factors are the familiarity of NDCA with the law governing the case and the avoidance of unnecessary problems of conflict of law in an application of foreign law. *See, e.g.*, *Volkswagen*, 545 F.3d at 315. These factors are both neutral. NDCA has significant experience with patent cases, and there is no conflict of law issues.

## V.     CONCLUSION

For all these reasons, good cause exists to transfer this case because NDCA is clearly the more convenient forum. Oracle respectfully requests this Court transfer this case to NDCA.

Dated:  June 27, 2025                    Respectfully submitted,

/s/    *Jeffery G. Homrig*
Jeffrey G. Homrig (SBN 24129988)
300 Colorado St, Suite 2400
Austin, TX 78701
Tel: 737-910-7300 | Fax: 737-910-7301
jeff.homrig@lw.com

LATHAM & WATKINS LLP
Tara D. Elliott (*Pro Hac Vice*)
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
Tel: 202.637.2200 | Fax: 202.637.2201
tara.elliott@lw.com

Amit Makker (*Pro Hac Vice*)
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Tel: 415-391-0600 | Fax: 415-395-8095
amit.makker@lw.com

Paige Arnette Amstutz (SBN 00796136)
SCOTT, DOUGLASS & MCCONNICO
303 Colorado Street, Suite 2400
Austin, TX 78701
Tel: (512) 495-6300 | Fax: (512) 495-6399
pamstutz@scottdoug.com

*Counsel for Defendants Oracle Corporation and*
*Oracle America, Inc.*

## <u>CERTIFICATE OF CONFERENCE</u>

In accordance with Local Rule CV-7(G), counsel for the parties conferred on June 27, 2025, via videoconference.  MOV-ology indicated that it opposes the motion.

*/s/ Amit Makker*
Amit Makker

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I certify that, on June 27, 2025, all counsel of record who have appeared in this case are being served with a copy of the foregoing via the Court's CM/ECF system, and, pursuant to Local Rule CV-5.2(e), via e-mail unredacted copies of any documents filed under seal in connection with this document.

*/s/ Jeffrey G. Homrig*
Jeffrey G. Homrig